## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**B & B ENTERTAINMENT, INC., et al.,**

      **Plaintiffs,**      **Case No. 2:07-cv-875**

**v.**      **JUDGE EDMUND A. SARGUS, JR.**

**PASTOR WILLIAM R. DUNFEE, et al.,**      **MAGISTRATE JUDGE TERENCE P. KEMP**

      **Defendants.**

## OPINION AND ORDER

Plaintiffs B&B Entertainment Inc. and Thomas George are the owner and operator of an "adult cabaret" business (the "Foxhole") in Coshocton County, Ohio. (Compl. ¶ 15; Pls.' Mem. 2.) Plaintiffs bring this case against Pastor William R. Dunfee, New Beginnings Ministries, Jeff Cline, Jackie L. Large, Jimmie Dale Couch, and Jason D. Hurley, who are jointly represented by counsel ("Ministry Defendants"); Deputy Kelly Sims and Sheriff Timothy L. Rogers, who are sued individually and as agents of the Coshocton County Sheriff's Department and who are jointly represented by counsel ("County Defendants"); and Bill Rahn and Jeremy M. Lyons, who have not made an appearance in this matter ("Absent Defendants").

Plaintiffs allege, and Ministry Defendants admit, that Ministry Defendants and Absent Defendants have made a regular practice of engaging in "protest" or "proclamation" activity outside the Foxhole since at least early 2007. (Compl. ¶ 17; Answer ¶¶ 54, 55.) Plaintiffs allege that such activities are unlawful. (Compl. ¶ 18.) Plaintiffs further allege that County Defendants have unlawfully assisted, or have failed to protect Plaintiffs from, such unlawful protest activity, and that Defendants have conspired to deprive Plaintiffs of various constitutional rights. (Compl. ¶¶ 17, 43.) Alleging violations of Ohio law and 42 U.S.C. §§ 1983, 1985, and 1986, Plaintiffs pray for monetary damages and injunctive relief. (Compl. ¶¶ 4–6, ¶¶ 32–36, p. 15–16.)

This matter is before the Court on motions for summary judgment filed by County Defendants on February 17, 2009 (Document 20) and Ministry Defendants on March 4, 2009 (Document 28). In support of their motions for summary judgment, among other defenses, Defendants deny the existence of any conspiracy and assert that the protest activities in question took place in a public right of way and were protected by the First Amendment. (Ministry Mot. 3, 6, 8; County Mot. 4, 8.)

For the reasons set forth below, Defendants' motions for summary judgment are **GRANTED**. The Court hereby **DISMISSES** Plaintiffs' claims under 42 U.S.C. §§ 1983, 1985, and 1986. The Court declines to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims, which are also hereby **DISMISSED** without prejudice.

I.    **Allegations**

   A.    **Protest Activity**

Plaintiffs allege that since at least January 2007, Defendants have conspired to "force their religion upon plaintiffs, their employees and their patrons and to prohibit plaintiffs from the operation of their . . . lawful business, all with the purpose and intent to prohibit plaintiffs from the exercise of their Constitutional rights to freedom of speech, enterprise and religion." (Compl. ¶ 17.)

Plaintiffs allege that, under the direction of Defendant Cline and/or under their own direction, Ministry Defendants and Absent Defendants have engaged in unlawful protest at the Foxhole on a regular basis. (Compl. ¶ 17A.) Such Defendants allegedly have entered and refused to remove themselves from Plaintiffs' private property, blocked the entrance to the drive at the Foxhole, stopped patrons and employees from entering the premises, surrounded patrons' vehicles to preclude entrance, photographed patrons and employees against their will, and

2

threatened patrons with adverse consequences when the patrons persisted in visiting the Foxhole. (Compl. ¶¶ 17B, 17C–17E.) Plaintiffs further allege that such Defendants have engaged in "other unlawful and destructive behavior in order to attempt to thwart plaintiffs in their constitutional expressions," including destroying property and causing an explosion in Plaintiffs' dumpster. (Compl. ¶ 17F.)

## B. County Defendants' Alleged Failure to Protect

Plaintiffs allege that County Defendants failed and refused to remove the other defendants and protesters from Plaintiffs' property, refused to file charges as requested by Plaintiffs, and refused to assist Plaintiffs in protecting their property and business. (Compl. ¶ 17G.)

According to Plaintiffs, they have made numerous reports to the Coshocton County Sheriff's Department (the "Sheriff's Department") regarding certain defendants' trespassing, blocking traffic on the road and on Plaintiffs' drive, harassing Plaintiffs' patrons and employees, shining lights on Plaintiffs' surveillance cameras, and disturbing the peace. Plaintiff George asserts that he has provided copies of video recordings of certain defendants' and others' illegal activity to the Sheriff's Department and requested that trespassing charges be filed against those individuals. At the direction of Sheriff Rogers, however, no charges were filed and no action was taken. (Compl. ¶ 17N–17O.)

Plaintiffs assert that when they complained of certain defendants' activities and requested that trespassing charges be filed, Defendant Sims refused to file charges and told Plaintiffs "good luck." (Compl. ¶ 17K.) Plaintiffs reported this activity to Defendant Sheriff Rogers, who also failed to take action against any defendant. (Compl. ¶ 17L.) Plaintiffs further allege that on multiple occasions including on June 8, 2007, Sheriff Rogers personally viewed the trespass on

3

Plaintiffs' property and interference with Plaintiffs' business, but refused to take any action. (Compl. ¶ 17M.)

Plaintiffs contend that, on an unspecified date, when an unknown deputy had agreed to arrest and charge individuals who were unlawfully protesting at the Foxhole, Defendant Dunfee contacted Defendant Rogers, who dispersed the protesters but refused to file charges. Plaintiffs allege that the Sheriff's Department kept no report of this incident. (Compl. ¶ 17H.)

### C.   County Defendants' Alleged Assistance to Protesters

In addition to the alleged failure to protect Plaintiffs, Plaintiffs allege that County Defendants assisted Ministry Defendants and Absent Defendants in two ways. First, according to Plaintiffs, County Defendants used their positions with the Sheriff's Department to impair Plaintiffs' surveillance cameras and/or assist the protesters in their unlawful activity. (Compl. ¶ 17J.) Specifically, on May 11, 2007 and thereafter, Defendant Sims allegedly pointed a laser and/or spotlight on Plaintiffs' cameras so that the camera was unable to view trespassers and others. (Compl. ¶ 17I.) Second, Plaintiffs allege that Sheriff Rogers allowed Defendant New Beginnings Ministries and other defendants to hire Defendant Deputy Sims to act on their behalf, but refused to allow Plaintiffs to hire a deputy to protect Plaintiffs' establishment. (Compl. ¶ 17P.)

## II.   Plaintiffs' Claims

Plaintiffs sue under Ohio law as well as sections 1983, 1985, and 1986 of Title 42. (Compl. ¶¶ 4–6, 32–36.)

Plaintiffs' first, second, and third claims appear to be brought under 42 U.S. § 1983. Plaintiff's first claim alleges deprivation of Plaintiffs' rights to equal protection[1] and freedom of

---

[1] Specifically, Plaintiffs allege that they have been "denied equal rights with their contemporaries and/or persons who do not engage in freedom of speech/expression by operating an adult cabaret business." (Compl. ¶ 16.)

speech, enterprise, and religion. (Compl. ¶¶14–21.) For their second claim, Plaintiffs allege that they have been deprived under color of law of their right to be secure in their property; freedom of speech, expression, enterprise, and religion; equal protection (including selective enforcement of the law); and due process. (Compl. ¶¶22–27.) Plaintiffs' third claim also alleges selective enforcement of the law by County Defendants. (Compl. ¶¶28–31.)

Invoking the Court's supplemental jurisdiction, Plaintiffs' fourth and fifth claims allege trespass and interference with Plaintiffs' business relations under Ohio law. (Compl. ¶¶32–36, 37–41.)

For their sixth claim, Plaintiffs allege that Defendants violated 42 U.S. §§ 1985 and/or 1986 by conspiring to deprive Plaintiffs of their constitutional rights. (Compl. ¶¶42–44.)

## III.    Analysis

### A.    Standard of Review

County Defendants and Ministry Defendants have moved for summary judgment under Civil Procedure Rule 56. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

5

## B. Section 1983 Claims Against County Defendants

Plaintiffs do not name the Coshocton County Sheriff's Department, but rather name the sheriff and a deputy in their official and individual capacities. However, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. Suits against [local government] officials in their official capacity therefore should be treated as suits against the [local government]." *Shorts v. Bartholomew*, 255 Fed. Appx. 46, 57 (6th Cir. 2007) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, Plaintiffs' claims against County Defendants in their individual and official capacities will be treated as claims against (1) County Defendants in their individual capacities and (2) claims against County Defendants' local government employer, the Sheriff's Department.[2]

These constitutional claims implicate different standards of liability. "[A] local government may be held liable under § 1983 only for adopting a 'policy or custom' that violates federally protected rights,"[3] whereas "government officials sued in their individual capacities may be held liable under § 1983 when they violate constitutional rights that are 'clearly established.'" These standards are linked, however, by "the requirement that plaintiffs allege a cognizable constitutional claim." *Mitchell v. McNeil*, 487 F.3d 374, 376 (6th Cir. 2007) (citing *Schroder v. City of Fort Thomas*, 412 F.3d 724, 727 (6th Cir. 2005); *Saucier v. Katz*, 533 U.S. 194 (2001); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

---

[2] Defendant Sims is a full-time employee of the Coshocton County Engineer's Office; however, his activities at issue in this case were performed within the scope of his part-time work as a special duty deputy for the Sheriff's Department. (Sims Aff. ¶ 1.)

[3] Municipalities and other local government units can be sued under § 1983 where the allegedly unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," even if "such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–691 (1978). Municipal liability attaches only where the city's policymakers make "a deliberate choice to follow a course of action . . . from among various alternatives." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483–484 (1986)).

## 1. **Alleged Violation of Plaintiffs' Rights; Alleged Conspiracy**

Plaintiffs make several allegations to support their claims that County Defendants violated their rights and/or conspired with Ministry and Absent Defendants to violate Plaintiffs' rights. Plaintiffs contend that County Defendants have (i) violated Plaintiffs' rights to Life, Liberty, Property, Speech, Expression, Enterprise, and Religion; (ii) failed to protect Plaintiffs from Ministry Defendants' activities; (iii) violated Plaintiffs' right to equal protection by selectively enforcing the law; (iv) violated Plaintiffs' right to equal protection by allowing Ministry Defendants to hire a special duty deputy while not allowing Plaintiffs to do the same; (v) met with Ministry Defendants to conspire to deprive Plaintiffs of their rights; and (vi) flashed a spotlight or laser at Plaintiffs' cameras to conceal Ministry Defendants' unlawful activity. For the reasons discussed below, Plaintiffs do not allege a cognizable constitutional claim against County Defendants in either their individual or official capacities. Moreover, Plaintiffs' evidence does not present a genuine question of material fact as to Plaintiffs' allegation that County Defendants conspired with Ministry Defendants to deprive Plaintiffs of their rights.

### (i) *Asserted Rights to Life, Liberty, Property, Speech, Expression, Enterprise, and*

***Religion.*** Plaintiffs assert that County Defendants have violated Plaintiffs' rights to "life, liberty and property and freedom of speech, expression, enterprise and religion."[4] Plaintiffs have presented no evidence that County Defendants have violated such asserted rights. As for the focus of Plaintiffs' lawsuit, there is no evidence that County Defendants have prevented Plaintiffs or any of their associates from running their business or expressing themselves through speech, dance, or otherwise.

---

[4] It is unclear which of these violations, if any, are charged solely against Ministry and Absent Defendants. For the purpose of Defendants' motions, the Court will assume that Plaintiffs charge all Defendants with all listed violations.

7

Rather than pointing to County Defendants' actions, Plaintiffs point to their inaction—their "failure to protect"—as the basis of Plaintiffs' claims. As discussed below, County Defendants' failure to arrest or otherwise deter Ministry Defendants does not violate Plaintiffs' rights.

*(ii) **Failure to Protect.*** Plaintiffs allege that County Defendants' failure to criminally charge or otherwise deter Ministry Defendants and Absent Defendants from their allegedly unlawful protest activities constitutes a violation of Plaintiffs' rights. (Pls.' Mem. 5–7.) Plaintiffs suggest that County Defendants should have arrested, removed, or charged protesters for alleged conduct including trespassing on Plaintiffs' property and blocking ingress and egress from Plaintiffs' property. (*See* Compl. ¶ 17G.) Plaintiffs admit, however, that neither County Defendants nor any other deputy has ever witnessed a trespass by any protester. (George Dep. 131–32.) Plaintiff George further admits that when he called the Sheriff's Department to complain about trespassing, most of the time he meant that the protesters were in the right of way. (*Id.* 132–33.) He also admits that although the protesters surrounded patrons' cars and slowed them down, the protesters have never physically blocked someone from entering or parking on Plaintiffs' property. (*Id.* at 68–69.) Finally, it is undisputed that when Plaintiff George has called the Sheriff's Department to complain, the Department has sent a deputy to respond to the call. (*Id.* at 131.) Over the last 2½ years, Plaintiff George admits that the Sheriff's Department has sent a deputy to the Foxhole approximately 50-60 times. (*Id.* at 142.)

As noted above, however, even assuming that County Defendants could have arrested other otherwise deterred the protesters, their failure to do so would not violate Plaintiffs' rights. The state's failure to protect a plaintiff from a third party's violation of the plaintiffs' rights is not sufficient to state a claim under § 1983. Rather, the state must actually inflict the alleged

harm to trigger § 1983 liability. *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489

U.S. 189, 200 (1989) ("In the substantive due process analysis, it is the State's affirmative act of

restraining the individual's freedom to act on his own behalf—through incarceration,

institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of

liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his

liberty interests against harms inflicted by other means.").

As private citizens, Plaintiffs "lack[] a judicially cognizable interest in the prosecution or

nonprosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) (holding that "a

citizen lacks standing to contest the policies of the prosecuting authority when he himself is

neither prosecuted nor threatened with prosecution"); *see also Mason v. Richardson*, 2005 U.S.

Dist. LEXIS 12203, 3–4 (N.D. Tex. June 21, 2005) (holding that where the "Plaintiff's claims

appear to be based on the [defendants'] alleged failure . . . to adequately investigate his

complaint" against a third party, the plaintiff "has not asserted a protected right . . . [under]

1983") (citing *Linda R.S.*, 410 U.S. at 619; *Love v. Bolinger*, 927 F. Supp. 1131, 1137 (S.D. Ind.

1996); *Nieves-Ramos v. Gonzalez-De-Rodriguez*, 737 F.Supp. 727, 728 (D. Puerto Rico 1990);

*Johnson v. Craft*, 673 F. Supp. 191, 193 (S.D. Miss. 1987)).

As to County Defendants' alleged failure to protect Plaintiffs from Ministry Defendants'

activities, there is no genuine question of material fact as to Plaintiffs' failure to state a

cognizable constitutional claim or to demonstrate a conspiracy to violate Plaintiffs' rights.

*(iii) Selective Enforcement of the Law.* Plaintiffs assert that their right to equal

protection has been violated by County Defendants' alleged selective enforcement of the law. In

order to state a claim of selective enforcement, a plaintiff must demonstrate that (1) the state

actor "single[d] out a person belonging to an identifiable group, such as those of a particular race

9

or religion, or a group exercising constitutional rights," for enforcement even though he has decided not to enforce the law against persons not belonging to that group in similar situations; (2) the state actor initiated the enforcement with a discriminatory purpose; and (3) the enforcement must have a discriminatory effect on the group to which the defendant belongs. *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991) (setting forth the rule for selective prosecution)); *Cunningham v. Sisk*, 136 Fed. Appx. 771, 774 (6th Cir. 2005) (holding that the selective prosecution rule set forth in *Anderson*, 923 F.2d 450, also applies to selective enforcement). There is a strong presumption that state actors have properly discharged their official duties, and the plaintiff must present clear evidence to the contrary in order to overcome that presumption: "the standard is a demanding one." *United States v. Armstrong*, 517 U.S. 456, 463 (1996).

Plaintiffs' claim of selective enforcement does not allege that they have been targeted for enforcement; rather, Plaintiffs' case against County Defendants focuses on County Defendants' alleged nonenforcement of the law against Ministry Defendants and Absent Defendants—in other words, County Defendants' inaction. Plaintiffs assert in their memorandum that "[w]hen the discretion of an officer allow[s] persons such as the protesters to interfere with the legal operation of a business and the law enforcement officers always choose not to enforce the law as to the protesters (and to the detriment of the plaintiffs) . . . that is selective enforcement." (Pls.' Mem. 16–17.) Plaintiffs' selective enforcement claim boils down to the assertion that County Defendants protected the protesters' First Amendment rights by failing to enforce the law against them, but did not protect Plaintiffs' First Amendment rights—by failing to enforce the law against the protesters. (Pls.' Mem. 16 ("the plaintiffs are clearly similarly situated to the protester defendants in terms of First Amendment rights, yet the County defendants chose only

10

to protect the rights of the protesters").) Plaintiffs assert that County Defendants' inaction affected the protesters and Plaintiffs unequally. No deputy witnessed an act of violence or trespass; no party has been injured or blocked from entry. Even if criminal conduct could have occurred, Plaintiffs have not raised a genuine issue of material fact as to a claim of selective failure to prosecute. There is no genuine question of material fact as to Plaintiffs' claim of selective enforcement of the law.

*(iv) Hiring of Special Duty Deputies.* Plaintiffs contend that County Defendants violated Plaintiffs' right to equal protection by allowing Ministry Defendants to hire special duty deputies and refusing to allow Plaintiffs to do the same. It is undisputed that Ministry Defendants hired deputies from the Sheriff's Department, including Defendant Sims, to serve special duty outside the Foxhole on several limited occasions. (Compl. ¶ 17P; County Mot. 5 (citing Rogers Aff. ¶ 10, Feb. 11, 2009).) Plaintiffs also allege, and Defendants do not dispute, that Defendant Sheriff Rogers "refused to allow plaintiffs to hire deputy sheriffs to protect plaintiffs' establishment." (Compl. ¶ 17P.)

The parties do not dispute that Ministry Defendants requested special deputies in early 2007, within a few months of starting their protest activity. (County Defs.' Resp. to Pl.'s Interrogs. ¶ 16 (Doc. 31-8); Compl. ¶ 17I; George Dep. 97–98; Compl. ¶ 17 (alleging that the protests began at least as early as January 2007); Dunfee Aff. ¶ 2 (Doc. 28-2) (stating that the protests began in August 2006).)

The Court finds that there is no dispute in the record as to when special deputies were present at the Foxhole. The evidence shows that deputies served special duty four or five times: Defendant Sims served special duty on April 27, 2007 and May 12, 2007, and other deputies served special duty on August 16, 2007, August 25, 2007, and likely August 10, 2007. (County

11

Defs.' Resp. to Pl.'s Interrogs. ¶¶ 6, 11 (Doc. 31-8); Rogers Aff. ¶ 5, April 15, 2009.) While

Plaintiff George suggests in his affidavit that special duty deputies were present at the Foxhole

on 26 different occasions, this assertion is not made from personal knowledge, and thus cannot

be considered for the purpose of summary judgment.[5] (George Aff. ¶¶ 41–43.) Rule 56

affidavits "must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P.

56(e). The Court will not rely on statements made in Plaintiff George's affidavit concerning

matters outside of his personal knowledge. No evidence has been presented to suggest that any

special deputies worked after the Complaint was filed on August 31, 2007.

According to Plaintiff George, he has not spoken with Defendant Rogers, but spoke with

Lieutenant Bill Kobel in late May or early June of 2007 and requested special deputies. (George

Dep. 96–97 (stating that the meeting took place approximately three weeks after May 11, 2007,

when Defendant Sims shined a laser pointer at Plaintiffs' surveillance camera).)

Defendants present evidence showing that the special duty deputies requested by

Plaintiffs would have been duplicative of the deputies previously requested by Ministry

Defendants. The special duty deputies hired by Ministry Defendants were not provided merely

to serve Ministry Defendants, but were "there to keep the peace . . . and protect all concerned."

(County Mot. 5–6 (citing Rogers Aff. ¶ 10, Feb. 11, 2009).) Thus, because Ministry Defendants

had already hired special duty deputies, "there was no need for the Foxhole to have its own

---

[5] Further, Plaintiff's assertion is based entirely on County Defendants' responses to interrogatories, and those responses do not support Plaintiff's assertion. (George Aff. ¶¶ 41-43, Ex. A-4, A-5, A-12; County Defs.' Resp. to Pl.'s Interrogs. ¶¶ 6, 11 (Doc. 31-8) (stating that 26 deputies served "any duty" at the Foxhole, but listing only four dates on which special duty was served).) While County Defendants' interrogatory response indicates that 26 deputies served "any duty" at the Foxhole, many of those deputies were responding to Plaintiffs' own requests for police assistance. As Defendant Rogers stated in his affidavit, he read the interrogatory to include "all deputies who had responded to calls as they are on 'duty' when on official business." (Rogers Aff. ¶ 3, April 20, 2009.) Plaintiff George has admitted that when he has called the Sheriff's Department to complain, the Department has sent a deputy to respond, and over the last 2½ years, the Sheriff's Department has sent a deputy to the Foxhole approximately 50-60 times. (George Dep. 131, 142.)

12

special duty officer."[6] (*Id.*) Plaintiffs have presented no evidence rebutting this assertion, except to the extent that Plaintiff George admits that his request for a deputy was more demanding than Ministry Defendants' request, as discussed below.

Plaintiff George contends that Ministry Defendants' ability "to hire an off duty officer to come over and sit across the street . . . has a chilling effect" on Plaintiffs' business. (George Dep. 98, 182.) Plaintiff George suggested that he requested a special duty deputy to serve in a way that would not have the same chilling effect on his business: "Well, certainly, 1 wouldn't have the cruiser sitting across the street and he would be walking the parking lot." (George Dep. 185 (emphasis added).) Plaintiff George's own statements make it clear that his request for a special duty deputy did not seek to replicate the prior arrangement between Ministry Defendants and the Sheriff's Department. (*See* Rogers Aff., Feb. 11, 2009, Ex. C (letter from Lt. William Kobel to Pastor William Dunfee, stating that the provision of a special duty deputy would be contingent upon the condition that the officer would be in a patrol car parked across the road from the Foxhole, and would remain at his vehicle except in case of a safety issue).)

Further, it is undisputed that Defendant Sheriff Rogers did not require any deputies to work special duty at the Foxhole. Rather, each requested time slot was filled, if at all, on a volunteer basis, meaning that a deputy had to seek such paid extra duty. (Rogers Aff., Feb. 11, 2009, Ex. C (letter by Lt. Kobel to Defendant Dunfee, stating that "[t]his special duty assignment is dependent upon the availability and willingness of officers to sign up for this detail"; "[r]egular duty patrol officers will **not** be utilized for this"; and "[t]here are no guarantees that

---

[6] In their memorandum in opposition, Plaintiffs state that "[o]n various occasions, including but not limited to the four dates acknowledged by the County defendants, the County, through defendant Sheriff Rogers, permitted the protester defendants to hire special deputies . . . but refused to permit plaintiffs to do the same." (Pls.' Mem. 6 (citing George Aff. ¶¶ 37–39, 41–43, Ex. A-4, A-5, A-12, A-13; Rogers Aff. ¶¶ 6–7) (emphasis added).) It is unclear whether Plaintiffs requested to hire special duty deputies on the same "various occasions" that the Ministry Defendants hired the deputies, and the parties have submitted no evidence regarding the dates Plaintiffs sought to hire special duty deputies.

any of our officers will sign up to work this detail"); George Aff., Ex. A-12 ("Foxhole Detail" sign-up sheet); Rogers Aff. ¶ 4, April 15, 2009 (stating that three of the four time slots on the aforementioned sign-up sheet were never filled).)

Considering the above, and in the absence of an affirmative right to hire a special duty deputy, the Court finds that County Defendants did not violate Plaintiffs' rights by allowing Ministry Defendants to hire special deputies for a limited time and refusing Plaintiffs' request to do the same.

*(v) **Alleged Conspiratorial Meeting.*** Plaintiffs assert that County Defendants met with Ministry Defendants to conspire to deprive Plaintiffs of their rights. Plaintiffs' only evidence of conspiratorial communications or meetings between Ministry Defendants and County Defendants consists of (1) Plaintiff George's affidavit; (2) Plaintiff George's deposition; and (3) notations made by a county police dispatcher, contained in Ex. A-4 to Plaintiff George's affidavit.

First, Plaintiff George stated in his affidavit that "Sheriff Rogers, his staff and other County employees met privately with the protesters to plan their protest." (George Aff. ¶ 40 (Doc. 31-2) (citing Ex. A-4 at 6/20/06 notation (Doc. 31-4)).) This statement is not based on personal knowledge, but rather purports to describe a private meeting between other parties. As noted above, the Court will not rely on statements made in Plaintiff George's affidavit concerning matters outside of his personal knowledge.[7] Fed. R. Civ. P. 56(e).

Second, Plaintiff George recounted at his deposition what Lieutenant Kobel allegedly told him about Defendants' alleged meeting to discuss the protest activity. According to this secondhand account, Sheriff Rogers, the prosecutor, and Defendant Dunfee "had all sat down

---

[7] Further, to support his statement, Plaintiff cites evidence on the record which does not support his assertion. *(See* George Aff., Ex. A-4 at 6/20/06 notation (Doc. 31-4).) This evidence is further discussed below.

14

and had a meeting on what they would be allowed to do in their request to try to shut my business down or to protest out there and that they were allowed to hire a deputy to sit across the street from" the Foxhole. (George Dep. 96–98 (Doc. 34).) Construing the evidence and drawing all reasonable inferences in Plaintiffs' favor, Lieutenant Kobel's alleged account of the meeting still does not suffice to create a genuine issue of material fact as to a conspiracy.

County Defendants acknowledge that they met with Ministry Defendants for the purpose of making clear what was or was not legal activity. By itself, the fact of a meeting is not evidence of a conspiracy. Further, the statement allegedly made by Lieutenant Kobel corroborates County Defendants' description of the meeting as advising Ministry Defendants of legal and illegal parameters.

Defendants provided a copy of a March 23, 2007 letter "[f]rom the Sheriff's Desk" informing the sheriff's deputies that "[h]aving spoken to Lenny Fowler's [and Ministry Defendants'] church group . . . and having received communication from the County Engineer, [Defendant Rogers is] confident that the right of way is indeed to the building . . . and is considered to be public property, therefore they, the church, can walk and stand on 'public' property." (Rogers Aff. ¶ 3, Ex. A, Feb. 11, 2009; see Wachtel Aff. ¶ 2–3, 5 (Doc. 20-3).) Further, County Defendants stated in their response to Plaintiffs' interrogatories that Defendant "Dunfee and Lenny Fowler came to my office to request special duty deputies in early 2007." (County Defs.' Resp. to Pl.'s Interrogs. ¶ 16 (Doc. 31-8).) Thus, Defendants apparently do not dispute that they communicated regarding the legal limits of Ministry Defendants' activities. Nor do Defendants dispute Plaintiffs' allegation that County Defendants allowed Ministry Defendants to hire a special duty deputy.

15

Plaintiffs have presented no evidence to suggest that any communications between County and Ministry Defendants expressed or resulted in an understanding or a common goal to deprive Plaintiffs of any constitutional right.

Third, the police dispatcher's notations, made in June 2006, do not support Plaintiffs' allegation that County Defendants conspired with Ministry Defendants to close the Foxhole. To support their allegations that County Defendants conspired to close the Foxhole, Plaintiffs point to the county police dispatcher's notes dated June 20, 2006, in which the dispatcher noted that a deputy "is standing by at the Fox Hole while some people close it down." (Ex. A-4 to George Aff., at 6/20/06 notation (Doc. 31-4).) Plaintiffs imply that this notation shows that a deputy "stood by" in support of "some people" (presumably Ministry Defendants) while they tried to close down the Foxhole.

Defendants respond that the June 2006 notation did not relate to Defendants' protest activity (which they assert did not begin until August 2006), but was made in response to a request for police assistance <u>by the Foxhole operator</u> relating to an altercation between Foxhole owners. (Dunfee Aff. ¶ 2 (Doc. 28-2); Rogers Aff. ¶ 6, April 15, 2009.) To explain the June 2006 notation, Defendant Rogers stated in his affidavit that "[a]t the request of the club, we sent a deputy because the caller was concerned there may be an altercation involving a dispute [between] the club owners . . . The club operator communicated something about the <u>club closing down that evening due to the owners' dispute</u>, and was concerned about violence as one Foxhole owner had apparently previously shot another Foxhole owner." (Rogers Aff. ¶ 6, April 15, 2009 (emphasis added).)

While Plaintiffs and Defendants dispute the meaning of the June 20, 2006 dispatcher notation, Plaintiffs have provided no evidence to link the notation to protest activity, and in fact

16

have provided no evidence showing that protests were occurring as early as June 2006. The Court finds that the dispatcher's notation does not present a genuine issue as to material fact.

*(vi) Flashing Lights on Cameras.* Plaintiffs allege, and County Defendants admit, that an agent of the Sheriff's Department has flashed a light or laser at Plaintiffs' surveillance camera(s). (Compl. ¶¶ 17I, 17O; Sims Aff. ¶ 3 (Doc. 20-4).) Plaintiffs allege that such conduct was intended to render their cameras inoperable in order to assist the other defendants in their unlawful activities. (Compl. ¶¶ 17I, 17O.) County Defendants admit that Defendant Sims momentarily shined a "laser pointer" in the direction of Plaintiffs' camera(s) on a single occasion, but assert that he did so not in order to "cover up criminal activity," but out of curiosity after being informed that Plaintiffs had installed a new camera. (County Mot. 6; Sims Aff. ¶ 3 (Doc. 20-4).) Plaintiff George acknowledges that this occurred on only one occasion, and it is undisputed that Plaintiffs' cameras were not damaged. (George Dep. 101; County Mot. 6; Pls.' Mem. 6.) Plaintiffs have presented no evidence to support their conclusory allegations that County Defendants shined a light in order to conceal criminal activity, or that criminal activity was even occurring at that time. The Court finds that these allegations do not present a genuine issue of material fact as to any deprivation of Plaintiffs' rights or an alleged conspiracy.

Considering each alleged action or omission individually and together, the Court finds that Plaintiffs have not provided sufficient evidence to create a genuine question of material fact as to whether County Defendants have violated Plaintiffs' rights. Nor does Plaintiffs' evidence present a genuine question of material fact as to Plaintiffs' allegation that County Defendants conspired with Ministry Defendants to deprive Plaintiffs of their rights.

17

## 2. **Qualified Immunity**

Even if County Defendants had violated Plaintiffs' rights, they would be shielded in their personal capacities from liability under the doctrine of qualified immunity. Qualified immunity "serves to protect government officials who perform discretionary functions from both suit and liability, provided that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Revis*, 489 F.3d at 280 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies, the Court must first determine whether the plaintiff has demonstrated the violation of a constitutionally protected right. *Id.*, 489 F.3d at 280 (citing *Charvat v. E. Oh. Reg'l Wastewater Auth.*, 246 F.3d 607, 616 (6th Cir. 2001)). Second, the Court must determine "whether the right is so 'clearly established' that a reasonable official would understand that what he is doing violates that right." *Id.*, 489 F.3d at 280 (quoting *Charvat*, 246 F.3d at 616). The Court may also examine "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Id.*, 489 F.3d at 280 (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005)).

Plaintiffs do not dispute that County Defendants exercised their discretionary functions in deciding whether to arrest or charge the protesters. Even assuming that Plaintiffs had demonstrated the violation of a protected right, that right would not be "so clearly established that a reasonable official would understand that what he is doing violates that right." As County Defendants point out in their Motion, County Defendants "were not on notice that [Plaintiffs] had a 'clearly established' . . . right to have protesters arrested under circumstances, where defendants (1) believed there was not a trespass and (2) did not personally witness the

18

misdemeanor. However, it was 'clearly established' that the protesters had a right to assemble and exercise their freedom of speech on the public right of way." (County Defs.' Mot. 14 (citing *Logsdon v. Hains*, 492 F.3d 334, 338–39 (6th Cir. 2007) (upholding the plaintiff's claim against defendant police officers who arrested him for trespass after he protested on public property)).)

Plaintiffs contend that County Defendants are not entitled to qualified immunity due to their "deliberate indifference for the rights of plaintiffs," asserting that County Defendants had a custom or policy of permitting trespass and ignoring Plaintiffs' First Amendment rights. (Pls.' Mem. 14.) As discussed above, however, it is undisputed that County Defendants never witnessed a trespass, and County Defendants are, in any case, under no duty to protect Plaintiffs' First Amendment rights against the actions of private parties. Even if such a claim were to be recognized, County Defendants would be entitled to qualified immunity insofar as such claim was not clearly established at the time of the alleged conduct.

## B. Section 1983 Claims Against Ministry Defendants

Section 1983 creates a right to recover damages against "[e]very person who, under color of [law] subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities." 42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must establish that (1) a person acting under color of state law (2) deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The "under color of law" element of a § 1983 claim "excludes . . . 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs.*, 526 U.S. at 50 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). Because Ministry Defendants are private persons, in

19

order to state a claim against them under § 1983, Plaintiffs must show that Ministry Defendants' actions may be "fairly attributable to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982)).

As Ministry Defendants point out, a plaintiff can demonstrate that a private person's challenged conduct is fairly attributable to the state by satisfying one of three tests: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test. (Ministry Mot. 6 (citing *Chapman*, 319 F.3d at 833).) However, because Plaintiffs allege cooperation or concerted action (conspiracy) between state and private actors, these tests do not apply. *Am. Postal Workers Union, Local 96 v. City of Memphis*, 361 F.3d 898, 900–01 (6th Cir. 2004).

Rather, "[i]f a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983." *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000); *Revis*, 489 F.3d at 289–91 (applying the same rule, arguably within the framework of the symbiotic/nexus test). Stated differently, a private person acts under color of law if he or she is "a willful participant in joint activity with the State or its agents." *Adickes*, 398 U.S. at 146–52 (citing *United States v. Price*, 383 U.S. 787, 794 (1966); *Monroe v. Pape*, 365 U.S. 167 (1961); *United States v. Classic*, 313 U.S. 299, 326 (1941); *Screws v. United States*, 325 U.S. 91, 107–111 (1945); *Williams v. United States*, 341 U.S. 97, 99–100 (1951)) (holding that where a Caucasian teacher accompanied by African-American students was refused service at a restaurant and was subsequently falsely arrested for vagrancy, the teacher would be entitled to relief against the restaurant under § 1983 if she could prove that the restaurant employee and city policeman reached an understanding to deny her service or to cause her arrest "because she was a white person in the company of Negroes"

20

because "[t]he involvement of a state official in such a conspiracy plainly provides the state action essential" to such a claim); *Moore v. Paducah*, 890 F.2d 831 (6th Cir. 1989).

To prove a civil conspiracy between Defendants, Plaintiffs must show that (1) there was a single plan, (2) Defendants shared in the general conspiratorial objective, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to Plaintiffs. *Memphis*, 361 F.3d at 905 (citing *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985)).

Plaintiffs' evidence in support of its conspiracy theory is discussed in the Court's analysis of County Defendants' liability under § 1983, above. For the reasons discussed above, Plaintiffs have not presented sufficient evidence to raise a genuine question of material fact as to the existence of a conspiracy between Ministry and County Defendants to violate a constitutional right of Plaintiffs. Because Plaintiffs have not shown that Ministry Defendants' actions are attributable to the state, Ministry Defendants cannot be liable under § 1983. Plaintiffs' § 1983 claims against Ministry Defendants therefore must be dismissed.

## C.    **Section 1985**

Section 1985 creates a right to recover damages against persons who conspire to interfere with the civil rights of another. To state a cause of action under § 1985(3), Plaintiff must allege: (1) a conspiracy (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is "injured in his person or property" or "deprived of having and exercising any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971); *Vakilian v. Shaw*, 335

21

F.3d 509 (6th Cir. 2003). Section 1985(3) does not require state action and can reach wholly private conspiracies. *Griffin*, 403 U.S. at 101–02.

In *Griffin*, the Supreme Court held that in order to recover under § 1985(3), "there must be some racial, or *perhaps otherwise class-based*, invidiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102 (emphasis added). The Court more recently had occasion to address the scope of "perhaps otherwise class-based, invidiously discriminatory animus" in the context of anti-abortion protesters. In *Bray v. Alexandria Women's Health Clinic*, the plaintiffs asserted that animus against anti-abortion protesters qualified as "otherwise class-based, invidiously discriminatory animus." 506 U.S. 263, 269 (1993). The Court disagreed, stating that "[n]either common sense nor our precedents support this." *Id.*, 506 U.S. at 269. The Court "reject[ed] the apparent conclusion of the District Court . . . that opposition to abortion constitutes discrimination against the 'class' of 'women seeking abortion.'" *Id.*, 506 U.S. at 269. The Court noted, "[w]hatever may be the precise meaning of a 'class' for purposes of *Griffin*'s speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Id.*, 506 U.S. at 269. The Court concluded that "'[w]omen seeking abortion' is not a qualifying class." *Id.*, 506 U.S. at 269.

As in *Bray*, "persons who . . . engage in freedom of speech/expression by operating an adult cabaret business" do not qualify as a class under § 1985(3). (Compl. ¶ 16.) Thus, Plaintiffs' § 1985(3) claim fails as a matter of law because there is no "class-based, invidiously discriminatory animus."[8] *See Griffin*, 403 U.S. at 102; *Bray*, 506 U.S. at 269.

---

[8] The dismissal of Plaintiffs' claim under § 1985 also voids Plaintiffs' § 1986 claim. Section 1986 "creates a right to recover damages . . . against every person who has knowledge of, and power to prevent, a § 1985 conspiracy, but neglects or refuses to act." 42 U.S. § 1986; *Burnett v. Grattan*, 468 U.S. 42, 45 n.5 (1984); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 315 (6th Cir. Ohio 2005). In order to have a valid claim under § 1986, there must be a

## D. State Law Claims

Invoking the Court's supplemental jurisdiction, Plaintiffs allege that Defendants have violated Ohio law by (1) trespassing on Plaintiffs' property and (2) interfering with Plaintiffs' business relations. (Compl. ¶¶32–36, 37–41.) Because the Court disposes of Plaintiffs' federal claims by this Order, the Court declines to exercise supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367(c)(3). Consequently, Plaintiffs' state law claims are dismissed without prejudice. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001).

## II. Conclusion

For the reasons discussed above, the Court **GRANTS** Defendants' motions for summary judgment (Documents 20 and 28), **DISMISSES** Plaintiffs' claims under federal law, and declines to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims, which are also hereby **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

$\underline{6-8-2009}$
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

valid predicate claim under § 1985. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 207 (1970) (noting that the "scope [of § 1986] is keyed to that of § 1985"); *Radvansky*, 395 F.3d at 315 ("where plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986") (quoting *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990)). Because Plaintiffs do not state a valid claim under § 1985, their § 1986 claim also fails.

23